UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ZEBELEDE GARRISON,

    Plaintiff,

v.                                                                              Case No. 5:19-cv-291-TKW/MJF

CAPTAIN J. POPE, *et al.*,

    Defendants.
_____/

# REPORT AND RECOMMENDATION

Defendants have moved for summary judgment in this section 1983 action in which Plaintiff alleges that Defendants' administration of a chemical agent into a prisoner's cell violated the Eighth Amendment. (Doc. 58). Plaintiff responded in opposition. (Doc. 62). For the reasons set forth below, the undersigned recommends that Defendants' motion for summary judgment be denied.[1]

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Zebelede Garrison initiated this action on August 16, 2019, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). Garrison filed a third

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

amended complaint on January 13, 2020, which is the operative complaint. (Doc. 14). Garrison is suing two prison officials at Holmes Correctional Institution: Captain J. Pope and Sergeant J. Haddock. (*Id*.). Garrison is suing the Defendants in their individual capacities. (*Id*. at 2).[2]

Garrison claims that on January 15, 2019, Pope and Haddock violated his Eighth-Amendment right to be free from cruel and unusual punishments when they maliciously sprayed a chemical agent directly into his cell in response to Garrison informing them that he was having an asthmatic attack. (Doc. 14 at 5-6). Garrison asserts that Pope and Haddock's actions constituted excessive force and deliberate indifference to his serious medical need. (*Id*. at 7). Garrison alleges that as a result of Defendants' use of the chemical agent, he suffered "severe resp[i]r[a]tory problems and skin burned for weeks with blurry vision." (*Id*. at 6). As relief, Garrison seeks $57,999.97 in compensatory damages and $58,999.95 in punitive damages against each Defendant. (*Id*. at 7).[3]

Defendants argue that they are entitled to summary judgment because: (1) the evidence in the summary judgment record establishes that the force they used was

---

[2] The page numbers cited in this report and recommendation refer to numbers assigned by the court's electronic docketing system.

[3] Garrison's third amended complaint also sought injunctive relief (Doc. 14 at 7), but he has withdrawn that demand. (Docs. 39, 40).

reasonable and necessary under the circumstances; and (2) they are entitled to qualified immunity because "[b]ased on Plaintiff's refusal to obey lawful orders, Defendants' actions were reasonable under the circumstances." (Doc. 58 at 8-9, 15).

Garrison responded in opposition to Defendants' motion for summary judgment. (Doc. 62). The court deems Garrison's response timely filed. (*See* Doc. 62, Garrison Decl. at 16-17; *see also* Docs. 63, 64 (Bien-Aime Decl.)).

## II. FACTUAL BACKGROUND

The material facts set forth below are drawn from the following sources: (1) Garrison's verified third amended complaint (Doc. 14); (2) the evidentiary materials attached to Defendants' motion for summary judgment (Doc. 58, Ex. 1 (Pope Decl.), Ex. 2 (Haddock Decl.), Ex. 3 (Disciplinary Report)); (3) Garrison's verified Statement of Facts opposing Defendants' motion for summary judgment (Doc. 62 at 11-13); (4) Garrison's declaration (Doc. 62 at 24-27 (Garrison Decl.)); and (5) Inmate Hansel Castro's declaration (Doc. 62 at 29-30 (Castro Decl.)).[4] When the

---

[4] "A *pro se* plaintiff's complaint, . . . if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence." *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (citing *Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1980), and quoting Fed. R. Civ. P. 56(c)(4)) (footnote omitted).

Garrison also offered statements by two other inmates—S. Alday and R. Ozuna. (Doc. 62 at 19-20). These statements do not qualify as affidavits or sworn declarations because they are unsworn and do not comply with the requirements of 28 U.S.C. § 1746. The undersigned, therefore, has not considered them. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) ("[Courts] have never allowed . . .

parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Matters stated as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Garrison has had asthma all of his life. (Doc. 62, Garrison Decl.at 25, ¶ 4). Garrison uses two medications to treat his asthma symptoms: Alvesco as a daily medication, and Xopenex (an inhaler) as a rescue medication for an asthmatic attack. (*Id.*).

On January 15, 2019, Garrison was confined at Holmes CI in Dormitory H1, Cell H1-110, with Inmate Reymundo Ozuna. (Doc. 62, Garrison Decl. at 24, ¶¶ 1, 2; Doc. 58-1, Ex. 2, Haddock Decl. at 2, ¶ 10). At approximately 10:40 a.m., Garrison heard other inmates in his dormitory yelling, screaming and kicking their cell doors. (Doc. 62, Garrison Decl. at 24, ¶¶ 1, 2). Defendant Pope, who was assigned as B-Shift Supervisor, responded to the disturbance. (Doc. 58-1, Ex. 1, Pope Decl. at 1, ¶ 4). Pope received authorization from his superior officers to disperse chemical agents to quell the disturbance. (*Id.* at 2, 3, ¶¶ 9, 16).

---

litigants to oppose summary judgments by the use of unsworn materials"); *accord Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (it is improper for a district court to consider an unsworn affidavit).

After additional security staff arrived, Pope gave all inmates in H1 Dormitory a loud, final order to cease their disruptive behavior, stop kicking their cell doors, stop yelling and screaming, and to lay on their assigned bunks. (Doc. 58-1, Ex. 1, Pope Decl. at 1, 2, ¶¶ 5, 10). Garrison went to his cell door to see what was happening, and heard Pope announce: "Y'all want to yell and kick the door. I will gas all of y'all." (Doc. 62, Garrison Decl. at 24, ¶ 2). Garrison was not one of the inmates who was kicking his cell door. (Doc. 14 at 6; Doc. 62, Garrison Decl. at 24, 26, ¶¶ 1, 11). Some inmates complied with Pope's order, but several inmates did not comply and continued to create a disturbance. (Doc. 58-1, Ex. 2, Haddock Decl. at 2, ¶ 5).

Garrison saw correctional officers administer a chemical agent into a nearby cell—Cell H1-101. (Doc. 62, Garrison Decl. at 24, ¶ 3). The chemical agent "made it's way" to Garrison's cell and made it hard for him to breathe. (*Id*. at 25, ¶ 5). Garrison "was struggling for air trying to get Xopenex inhalations." (*Id*.).

Garrison's cellmate—Inmate Ozuna—helped Garrison lay down on his bed, called Defendant Pope's name, and told Pope, "My cellmate Garrison can't breathe good. He have [sic] asthma sir." (Doc. 62, Garrison Decl. at 25, ¶ 6). Pope responded, "We will be there, what room?" (*Id*.). Ozuna identified the cell number, and Defendants Pope and Haddock approached Garrison and Ozuna's cell. (*Id*. at 25, ¶

7). Garrison showed Pope his Xopenex inhaler, told Pope that he had asthma, and encouraged Pope to check his medical file for verification. (*Id.*).

At 10:46 a.m., Garrison heard Haddock tell Pope, "Time, Captain." (Doc. 62, Garrison Decl. at 26, ¶ 8). Pope then ordered Garrison and Ozuna to "back up." (*Id.*). Garrison complied, anticipating that Pope would open the cell door and take him to the medical department for treatment. (*Id.*). Instead, Haddock opened the food slot on the flap of Garrison's cell door and administered three, approximately one-second bursts of chemical agent OC through the portal directly at Garrison and Ozuna. (Doc. 62, Garrison Decl. at 26, ¶ 9; Doc. 58-1, Ex. 1, Pope Decl. at 3, ¶ 11; Doc. 58-1, Ex. 2, Haddock Decl. at 2, ¶ 12). Garrison states that he had not been kicking his cell door and that he was not warned before Haddock administered the chemical agent. (Doc. 62, Garrison Decl. at 26, ¶¶ 9-10; Doc. 62, Statement of Facts at 13, ¶ 12). Garrison had no opportunity to cover himself with bedding to avoid the effects of the spray. (Doc. 62, Garrison Decl. at 26, ¶ 9).

After administering the chemical agent into Garrison's cell, Pope and Haddock made him sit in the cell for 20-25 minutes. (Doc. 62, Garrison Decl. at 26, ¶ 11). At approximately 11:05 a.m., Garrison received a cool water decontamination shower. (Doc. 58-1, Ex. 1, Pope Decl. at 3, ¶¶ 13-14). As a result of Pope and Haddock spraying the chemical agent into Garrison's cell and leaving him there for

20-25 minutes, Garrison "had severe resp[i]r[a]tory problems and skin burned for weeks with blurry vision." (Doc. 14 at 6; Doc. 62, Statement of Facts at 13, ¶ 15).

On January 15, 2019, Pope wrote Garrison a Disciplinary Report for "Inciting Riots." (Doc. 58, Ex. C). On January 24, 2019, Garrison was convicted of the charge after a hearing, and was sentenced to 60 days in disciplinary confinement. (*Id.*).

### III.   RELEVANT LEGAL STANDARDS

**A.   <u>Summary Judgment Standard</u>**

Rule 56 of the Federal Rules of Civil Procedure states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d

918, 921 (11th Cir. 1995). In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the non-moving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

B.  **Qualified Immunity Standard**

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)).

Once that is shown, and it is undisputed here, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate." *Id*. The plaintiff must prove that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

C. **Eighth-Amendment Standard**

"The Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010). The "core judicial inquiry" for an Eighth Amendment excessive-force claim in a prison setting is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citation omitted). To state a claim for deliberate indifference to a serious medical need, a plaintiff must allege "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008), *overruled in part on other grounds, Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). To satisfy the intent element, a plaintiff must allege that the prison official had "subjective knowledge of a risk of serious harm" and disregarded that risk "by conduct that is more than [gross] negligence." *Danley*, 540 F.3d at 1312 (alteration in original).

## IV. DISCUSSION

Defendants argue that they are entitled to summary judgment because the force they used was reasonable and necessary under the circumstances and they are entitled to qualified immunity. (Doc. 58 at 8-9, 13-15). Their arguments, however,

are grounded in *their* version of events, which includes these critical facts: (1) at the time the chemical agent was disbursed into Garrison's cell, he was kicking his cell door, yelling and screaming in the wing, and encouraging other inmates to do the same; and (2) Garrison never made Pope or Haddock aware of his medical condition. (Doc. 58 at 3-6; Doc. 58-1, Ex. 1, Pope Decl. at 2-3, ¶¶ 6-7, 10, 15, 17; Doc. 58-2, Ex. 2, Haddock Decl. at 2-3, ¶¶ 10-11, 15). Garrison's summary judgment materials, however, raise genuine disputes as to these "facts."

According to Garrison—and as described in the Facts section above—Haddock and Pope sprayed Garrison directly with a chemical agent (1) when he was not kicking his cell door or causing a disturbance, (2) without warning, and (3) knowing that Garrison was suffering an asthmatic attack from the administration of a chemical agent nearby. These issues of fact preclude summary judgment in favor of the Defendants. Crediting Garrison's version of events, the facts support a reasonable inference that Haddock and Pope's use of pepper spray was not penologically justified—because Garrison was not misbehaving—and was for the very purpose of causing Garrison harm. *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("[W]hen conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version."); *Thomas*, 614 F.3d at 1311 ("[W]here chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use" violates the Eighth Amendment.); *see*

*also, e.g., Williams v. Rickman*, 759 F. App'x 849, 852-53 (11th Cir. 2019) (reversing the grant of summary judgment in favor of prison officials on prisoner's Eighth-Amendment claim when the prisoner-plaintiff created an issue of fact as to whether defendant's use of pepper spray was justified).

## V. Conclusion

Because there are genuine issues of material fact and Defendants have not shown that they are entitled to summary judgment as a matter of law, the undersigned respectfully **RECOMMENDS** that:

Defendants' motion for summary judgment (Doc. 58) be **DENIED**.

At Pensacola, Florida, this 21st day of October, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**